UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
UNITED STATES OF AMERICA
  *ex rel*. TZAC, INC.,

      Plaintiffs,

- v. -

OXFAM a/k/a OXFAM GB,

      Defendant.
------------------------------------------------------------------ x

18 Civ. 1500 (VEC)

**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES'
MOTION TO DISMISS PURSUANT TO 31 U.S.C. § 3730(c)(2)(A)**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
Telephone: (212) 637-2726

Of Counsel:

JESSICA JEAN HU
Assistant United States Attorney

# **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ...............................................................................................................1

BACKGROUND.......................................................................................................................................2

    I.   Procedural History and Allegations in the *Qui Tam* Complaint ................................................2

    II.  The False Claims Act..................................................................................................................3

ARGUMENT ...........................................................................................................................................5

    I.   The Court Should Dismiss the Complaint Because the Government Has Exercised Its Statutory Authority Pursuant to 31 U.S.C. § 3730(c)(2)(A)........................................................5

        A.  The Clear Language of the FCA Grants the Government Unilateral Authority to Dismiss *Qui Tam* Actions ........................................................................................................5

        B.  The Government's Unilateral Authority to Dismiss *Qui Tam* Actions Arises From Its Prosecutorial and Executive Discretion ...............................................................................7

        C.  The Government's Unilateral Authority to Dismiss *Qui Tam* Actions Is Consistent With the Federal Rules of Civil Procedure ........................................................................8

    II.  Even Under the *Sequoia Orange* Standard, the Government Has Demonstrated a Rational Relationship Between Dismissal of the Complaint and a Valid Government Purpose .............9

        A.  Dismissal of the Complaint Is Rationally Related to the Valid Purpose of Conserving Government Resources.....................................................................................................10

        B.  Dismissal of The Complaint Is Also Rationally Related to the Valid Purpose of Avoiding Litigation That Interferes With the Government's Policies and the Administration of Its Programs .......................................................................................11

    III. The Government's Dismissal of the Complaint Is Not Fraudulent, Arbitrary or Capricious, or Illegal...............................................................................................................13

CONCLUSION.......................................................................................................................................14

**TABLE OF AUTHORITIES**

**Cases**

*Avco Corp. v. United States Dep't of Justice*, 884 F.2d 621 (D.C. Cir. 1989) ......................................... 3

*Borzilleri v. Abbvie, Inc.*, No. 15-CV-7881 (JMF), 2019 WL 3203000
    (S.D.N.Y. July 16, 2019) ............................................................................................................ 4, 10

*Chang v. Children's Advocacy Center of Delaware Weih Steve Chang*,
    No. 18-2311, 2019 WL 4309516 (3d Cir. Sep. 12, 2019) ................................................................ 10

*Citizens for Responsibility and Ethics in Washington v. Federal Election Comm'n*,
    892 F.3d 4348 (D.C. Cir. 2018) ......................................................................................................... 7

*Harisiades v. Shaughnessy*, 342 U.S. 580 (1952) ............................................................................... 12

*Health Choice Alliance LLC v. Bayer Corp.*, No. 5:17-CV-00123-RWS-CMC,
    2019 WL 4727422 (E.D. Tex. Sept. 27, 2019) ............................................................................ 10, 13

*Heckler v. Chaney*, 470 U.S. 821 (1985) .............................................................................................. 7

*Hedges v. Obama*, 724 F.3d 170 (2d Cir. 2013) ................................................................................... 6

*Islamic Am. Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34 (D.D.C. 2005) ............... 12

*Juliano v. Fed. Asset Disposition Ass'n*, 736 F. Supp. 348 (D.D.C. 1990) ....................................... 7, 8

*Mendez v. Holder*, 566 F.3d 316 (2d Cir. 2009) .................................................................................. 6

*Newman v. United States*, 382 F.2d 479 (D.C. Cir. 1967) ................................................................... 7

*Regan v. Wald*, 468 U.S. 222 (1984) .................................................................................................. 12

*Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925 (10th Cir. 2005) ................................................................ 1

*Russello v. United States*, 464 U.S. 16 (1983) ..................................................................................... 6

*Swift v. United States*, 318 F.3d 250 (D.C. Cir. 2003) ............................................................... 1, 7, 10

*United States ex rel. Davis v. Hennepin Cnty.*, No. 18-cv-01551 (ECT/HB),
    2019 WL 608848 (D. Minn. Feb. 13, 2019) ............................................................................ 8, 10, 13

*United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009) .......................................... 4

*United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211 (9th Cir. 1996) ....................................... 8

*United States ex rel. Kreindler & Kreindler v. United Tech. Corp.*,
  985 F.2d 1148 (2d Cir. 1993) .................................................................................................4

*United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*,
  151 F.3d 1139 (9th Cir. 1998) ..........................................................................................passim

*United States ex rel. Sibley v. Delta Reg. Med. Ctr.*,
  No. 4:17-cv-000053-GHD-RP, 2019 WL 1305069 (N.D. Miss. Mar. 21, 2019) ..........................5, 7

*United States v. Cooperatieve Bank U.A.*, 17 Civ. 2708 (LGS),
  2019 WL 5593302 (S.D.N.Y. Oct. 30, 2019) ...................................................................10

*United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975) ............................................................7

*United States v. EMD Serono, Inc.*, 370 F. Supp. 3d 483, 490 (E.D. Pa. 2019) ....................11

*United States v. Nixon*, 418 U.S. 683, 693(1974) ....................................................................7

*United States, ex rel. Amico v. Citigroup, Inc.*, No. 14-CV-4370 (CS),
  2015 WL 13814187 at *4, n.5 (S.D.N.Y. Aug. 7, 2015) ..................................................9

**Federal Statutes**

31 U.S.C. § 3729 .................................................................................................................1, 3

31 U.S.C. § 3730 ............................................................................................................passim

In accordance with the Court's order dated September 20, 2019 (Dkt. No. 14), and pursuant to its authority under 31 U.S.C. § 3730(c)(2)(A), the United States of America (the "United States" or the "Government") respectfully submits this memorandum of law in support of its motion to dismiss this *qui tam* action brought by relator The Zionist Advocacy Center, Inc. ("TZAC" or "Relator").

## PRELIMINARY STATEMENT

The Court should grant the Government's motion to dismiss Relator's complaint filed under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*. (Dkt. No. 6, hereinafter the "Complaint" or "Compl.").

As an initial matter, the Court may and should dismiss the Complaint simply because the Government has chosen to exercise its statutory authority to dismiss this action. As the D.C. Circuit has held, "[t]he decision whether to bring an action on behalf of the United States is . . . a decision generally committed to the government's absolute discretion . . . ." *Swift v. United States*, 318 F.3d 250, 253 (D.C. Cir. 2003) (internal citations omitted). Section 3730(c)(2)(A) gives the Government "an unfettered right to dismiss an action," *id.* at 252, as an exercise of its law enforcement powers and consistent with both Rule 41(a)(1) of the Federal Rules of Civil Procedure and the language of the FCA itself.

Even if the Court applies the "valid government purpose" standard, the Complaint should still be dismissed. *See United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998) ("*Sequoia Orange*"); *Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 936 (10th Cir. 2005). In this case, the Government has at least two valid purposes rationally related to dismissal of the *qui tam* action. First, allowing Relator to proceed in this litigation would impose substantial burdens on government resources; multiple courts across the country have held that conserving government resources is a valid purpose that alone justifies dismissal.

Moreover, dismissal would also serve the purpose of avoiding litigation that interferes with the Government's policies and the administration of its programs. Given Relator's allegations in the Complaint, litigating this case will necessarily implicate the Government's foreign policy positions and international aid programs. For these reasons, the Government easily meets even the more demanding *Sequoia Orange* standard for dismissal of the Complaint.Finally, to the extent Relator attempts to argue that dismissal is "fraudulent, arbitrary and capricious, or illegal," *Sequoia Orange*, 145 F.3d at 1145, no evidence supports such an assertion. For these reasons, the Court should dismiss the Complaint.

## BACKGROUND

### I. Procedural History and Allegations in the *Qui Tam* Complaint

Relator filed the Complaint in this case under seal on or about February 19, 2018. The Complaint alleges that the defendant Oxfam a/k/a Oxfam GB ("Oxfam") violated the FCA by submitting false certifications to the United States Agency for International Development ("USAID") in connection with Oxfam's applications to receive USAID grant funding. Compl. ¶ 9. Specifically, the Complaint alleges that, from approximately 2013 to 2017, Oxfam provided material support or resources to Hamas and/or the Palestinian Authority through a program it sponsored in the Gaza Strip. *Id.* ¶¶ 12-13. The Complaint further alleges that Oxfam's certifications to USAID that it "did not provide within the previous ten years . . . material support or resources to any individual or entity that commits, attempts to commit, advocates, facilitates, or participates in terrorist acts, or has committed, attempted to commit, facilitated, or participated in terrorist acts" were false as a result of this work. *Id.* ¶¶ 11-12.

With respect to the material support provided by Oxfam, the Complaint claims that Oxfam provided support and assistance to the Ministry of Agriculture and Ministry of National Economy in Gaza through a project known as the Gaza Urban and Peri-Urban Agricultural

Platform ("GUPAP"). *Id.* ¶ 13-14. According to the Complaint, "[s]ince Hamas controls the government in the Gaza Strip, the substantial effect of such assistance is to aid Hamas, which has been a Designated Foreign Terrorist Organization by the U.S. State Department since 1997." *Id.* ¶¶ 13-15. Alternatively, the Complaint alleges that even if Oxfam did not provide material support to Hamas, its certifications to USAID were still false because "the Ministry of Agriculture and the Ministry of National Economy are nominally subdivisions of the Palestinian Authority," *id.* ¶ 16, and the Palestinian Authority is itself "an 'entity' that 'facilitates' terrorist acts in that it takes steps to ensure that potential terrorists know that if they are killed or incarcerated as a result of their terrorism, their families will be provided for." *Id.* ¶ 18.

Following an investigation of Relator's allegations in the Complaint, the Government filed a Notice of Decision to Decline Intervention in the case on July 12, 2019. *See* Dkt. No. 4. On September 20, 2019, the Government filed a letter motion requesting that the Court adjourn the scheduled pretrial conference and proposing an initial briefing schedule for the Government's anticipated motion to dismiss. *See* Dkt. No. 12. The Court granted the Government's request on September 20, 2019. *See* Dkt. No. 14. On October 18, 2019, the Government requested, upon consent of Relator and Oxfam, a 30-day extension of the deadlines in the original briefing schedule, *see* Dkt. No. 15, and the Court granted this request. *See* Dkt. No. 16.

## II. The False Claims Act

The FCA serves as the "Government's primary litigative tool for the recovery of losses sustained as the result of fraud against the government." *Avco Corp. v. United States Dep't of Justice*, 884 F.2d 621, 622 (D.C. Cir. 1989). The statute imposes treble damages and civil penalties on any person who "knowingly presents, or causes to be presented [to the Government], a false or fraudulent claim for payment or approval." 31 U.S.C. §§ 3729(a)(1)(A)-(G). While the Attorney General may bring a civil action pursuant to the FCA, *see id.* § 3730(a),

3

the statute also permits private relators to pursue claims, on the Government's behalf, for damages suffered by the United States as a result of fraudulent claims for payment. *Id.* § 3730(b). The United States remains, however, the real party in interest in any such action brought by a relator. *See United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 934-35 (2009); *United States ex rel. Kreindler & Kreindler v. United Tech. Corp.*, 985 F.2d 1148, 1154 (2d Cir. 1993).

Because the United States is always the real party in interest in a *qui tam* action brought pursuant to the FCA, the statute provides that the United States may dismiss a relator's complaint "notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). The circuits have diverged somewhat, however, as to what standard of review (if any) applies to a decision by the Government to dismiss a *qui tam* complaint pursuant to Section 3730(c)(2)(A).  The D.C. Circuit "has described the Government's right to dismiss a relator's action under the FCA as 'unfettered' (even as it noted that a 'fraud on the court' might permit a court to look into the Government's reasons for dismissal)." *Borzilleri v. Abbvie, Inc.*, No. 15-CV-7881 (JMF), 2019 WL 3203000, at *1 (S.D.N.Y. July 16, 2019) (citing *Swift*). However, "[t]he Ninth and Tenth Circuits have held that the Government must demonstrate a 'valid government purpose' for dismissal and 'a rational relation between dismissal and accomplishment of [that] purpose.'" *Id.* (citing *Sequoia Orange*, 151 F.3d 1139, and *Ridenour*, 397 F.3d 925).

Although the Second Circuit has yet to weigh in on this circuit split, *see id.* at *2, regardless of the legal standard applied in reviewing the Government's motion, courts have consistently held that the Government may move to dismiss regardless of whether it has intervened in the case. *See Sequoia Orange*, 151 F.3d at 1145 (noting that Section 3730(c)(2)(A)

4

"may permit the government to dismiss a *qui tam* action without actually intervening in the case at all"); *United States ex rel. Sibley v. Delta Reg. Med. Ctr.*, No. 4:17-cv-000053-GHD-RP, 2019 WL 1305069, at * 1 (N.D. Miss. Mar. 21, 2019) ("Courts agree that it is unnecessary for the government to formally intervene before moving to dismiss") (collecting cases).

## ARGUMENT

I. **The Court Should Dismiss the Complaint Because the Government Has Exercised Its Statutory Authority Pursuant to 31 U.S.C. § 3730(c)(2)(A)**

Because Section 3730(c)(2)(A) grants the Government unilateral authority to dismiss a relator's *qui tam* action, which the Government has exercised here, the Court should dismiss the Complaint. In *Swift*, the D.C. Circuit correctly held that the clear language of the FCA provides the Government with an unfettered right to dismiss *qui tam* complaints, consistent with the Government's prosecutorial and executive discretion, as well as the Federal Rules of Civil Procedure.

### A. The Clear Language of the FCA Grants the Government Unilateral Authority to Dismiss *Qui Tam* Actions

The clear language of Section 3730(c)(2)(A) grants the Government the authority to dismiss this *qui tam* action. The section provides that "[t]he Government may dismiss the action with the defendant notwithstanding the objections of the [relator]." 31 U.S.C. § 3730(c)(2)(A). "May means 'to be permitted to.'" *Sibley*, 2019 WL 1305069, at * 6 (citing Black's Law Dictionary (10th ed. 2014)). The statute therefore on its face permits the Government to dismiss an FCA action, even over the relator's objection.

The import of Section 3730(c)(2)(A)'s permissive language is even more clear in comparison to other provisions within the FCA that require the Government to make a showing, or the Court to make a finding, as preconditions to dismissal. *Compare* 31 U.S.C. § 3730(b)(1) (allowing a relator to voluntarily dismiss "only if the court and the Attorney General give written

5

consent to the dismissal and their reasons for consenting"); *id.* § 3730(c)(3) (allowing the Government to intervene after initially declining "upon a showing of good cause"); *id.* § 3730(c)(4) (permitting the Government to seek a stay of discovery taken by the relator upon a showing that discovery "would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts."). The absence of preconditions for the Government's authority to dismiss pursuant to Section 3730(c)(2)(A) stands in especially stark contrast to Section 3730(c)(2)(B), which provides that the Government may settle an action over the objections of the relator, but only with the court's leave. Section 3730(c)(2)(B) permits a settlement over relator's objection "*if the court determines*, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." (Emphasis supplied.) In contrast, Section 3730(c)(2)(A) sets forth no comparable adjudicative role for the court, nor any applicable standard of review, and there is no basis to read such a role and standard into the dismissal provision.[1] *See, e.g.*, *Hedges v. Obama*, 724 F.3d 170, 189 (2d Cir. 2013) ("courts must presume that a legislature says in statute what it means and means in a statute what it says there"); *see also Mendez v. Holder*, 566 F.3d 316, 321-322 (2d Cir. 2009) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Pursuant to the clear statutory language of Section 3730(c)(2)(A), therefore, the Government may dismiss the Complaint in this case without any adjudication of its determination to do so.

---

[1] The reference in Section 3730(c)(2)(A) to a "hearing" does not contravene or condition the Government's unilateral authority to dismiss a *qui tam* complaint. As explained by *Swift*, "the function of a hearing [under 3730(c)(2)(A)] when the relator requests one is simply to give the relator a formal opportunity to convince the government not to end the case." 318 F.3d at 253.

### B. The Government's Unilateral Authority to Dismiss *Qui Tam* Actions Arises From Its Prosecutorial and Executive Discretion

The Government's authority under the FCA to dismiss this *qui tam* action comports with long-established principles of prosecutorial and executive discretion. It is a bedrock principle that "[t]he Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated." *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975); *see also Juliano v. Fed. Asset Disposition Ass'n*, 736 F. Supp. 348, 351 (D.D.C. 1990) ("Under our federal scheme, the Attorney General, through those acting in his name, decides whom to prosecute for violations of federal law."). Indeed, "the termination of pending prosecutions should not be judicially disturbed unless clearly contrary to manifest public interest." *Cowan*, 524 F.2d at 513. The Supreme Court has therefore long recognized that the decision "not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to [the Government's] absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). *See also United States v. Nixon*, 418 U.S. 683(1974) ("[T]he Executive Branch has exclusive authority and absolute discretion whether to prosecute a case"); *Newman v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967) ("Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings . . . or whether to dismiss a proceeding once brought"); *see also Citizens for Responsibility and Ethics in Washington v. Federal Election Comm'n*, 892 F.3d 434, 438 (D.C. Cir. 2018) (discussing applicability of doctrine to civil enforcement).

The Government's unfettered right under the FCA to dismiss a *qui tam* action is fully consistent with these foundational precepts. *See Sibley*, 2019 WL 1305069, at * 6 ("[T]he government's decision to dismiss a *qui tam* case is tantamount to the government's decision not to bring the action at all, and the Court should give it the same deference."). In *Swift*, a case

where the relator argued that dismissal was improper because the Government had failed to investigate her claims, the D.C. Circuit held that the Government's unfettered right to dismiss *qui tam* suits is consistent with its unilateral authority over prosecution. 318 F.3d at 251. Relying on the language of the statute itself, the Federal Rules of Civil Procedure, and the "presumption that decisions not to prosecute . . . are unreviewable," *id.* at 252, the D.C. Circuit held that nothing in the FCA "purports to deprive the Executive branch of its historical prerogative to decide which cases should go forward in the name of the United States." *Swift*, 318 F.3d. at 253. The *Swift* Court also correctly did "not assume that the *qui tam* provisions of the False Claims Act were intended to curtail the prosecutorial discretion of the Attorney General." *Juliano*, 736 F. Supp. at 351. To do otherwise would "impose [] additional constraints on dismissal" that "would effectively be policing the Government's right to dismiss, interfering with prosecutorial discretion in violation of an important separation-of-powers principle." *United States ex rel. Davis v. Hennepin Cnty.*, No. 18-cv-01551 (ECT/HB), 2019 WL 608848, at * 6 (D. Minn. Feb. 13, 2019). Because Section 3730(c)(2)(A) grants the Government unfettered authority to dismiss this *qui tam*, the Court should grant the Government's motion to dismiss.

  C. **The Government's Unilateral Authority to Dismiss *Qui Tam* Actions Is Consistent With the Federal Rules of Civil Procedure**

  Dismissal of this case is also consistent with Federal Rule of Civil Procedure 41(a)(1)(i), which permits a plaintiff to dismiss a civil action "without order of the court" where the adverse party, like Oxfam in this case, has not yet filed an answer or a motion for summary judgment. As the *Swift* Court correctly noted, dismissal pursuant to Rule 41(a)(1)(i) is not subject to judicial review. 318 F.3d at 252. In this case, the Government, as the real party in interest, has determined not to pursue the claims filed on its behalf by Relator. *Cf. United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1215 (9th Cir. 1996) ("[relators] are merely agents suing on behalf of the government, which is always the real party in interest") (collecting cases). The

8

Federal Rules therefore permit the Government to dismiss this case without the need to seek leave from the Court to do so. *See also United States, ex rel. Amico v. Citigroup, Inc.*, No. 14-CV-4370 (CS), 2015 WL 13814187 at *4, n.5 (S.D.N.Y. Aug. 7, 2015) (noting in dicta that "this Court is more inclined toward *Swift* than *Sequoia*," because "[d]eference to the Government here would thus comport with the Federal Rules of Civil Procedure."). For this additional reason, the Court should grant the Government's motion.

**II.     Even Under the *Sequoia Orange* Standard, the Government Has Demonstrated a Rational Relationship Between Dismissal of the Complaint and a Valid Government Purpose**

Although, as explained above, 31 U.S.C. § 3730(c)(2)(A) grants the Government unfettered discretion to dismiss a *qui tam* complaint, the Court may and should dismiss the Complaint even under the less deferential *Sequoia Orange* test adopted by the Ninth and Tenth Circuits.

Under the legal standard first established by the Ninth Circuit in *Sequoia Orange*, in order to justify dismissal of a *qui tam* complaint pursuant to 31 U.S.C. § 3730(c)(2)(A), the Government must satisfy a two-step test, which includes: "(1) identification of a valid government purpose; and (2) a rational relation between dismissal and accomplishment of the purpose." *Sequoia Orange*, 151 F.3d at 1145 (*accord Ridenour*, 397 F.3d at 936). If the Government satisfies this test, "the burden switches to the relator to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Sequoia Orange*, 151 F.3d at 1145

Here, the Government has met its burden to justify dismissal of the Complaint. Dismissal of the Complaint is rationally related to at least two valid government purposes: (1) conserving government resources; and (2) avoiding litigation that interferes with the Government's foreign policies and the administration of its international aid programs.

9

### A. Dismissal of the Complaint Is Rationally Related to the Valid Purpose of Conserving Government Resources

First, dismissal of Relator's Complaint is rationally related to the valid purpose of conserving government resources. Even though the Government has declined to intervene in the case, the Government would still likely have to expend significant resources if Relator proceeds in litigation. It is well established that "[t]he government has an interest in minimizing unnecessary or burdensome litigation costs." *Chang v. Children's Advocacy Center of Delaware Weih Steve Chang*, No. 18-2311, 2019 WL 4309516, at \*2 (3d Cir. Sept. 12, 2019). Insofar as governmental resources are directed towards monitoring and possibly still participating in this case as the real party in interest, those resources are necessarily directed away from other governmental priorities. Another court in this district recently held that the Government had persuasively argued for dismissal of a *qui tam* action where, "if continued, the litigation w[ould] require considerable governmental resources to address the scope of discovery requests and, should any discovery be allowed, to respond to document requests and to defend depositions." *United States v. Cooperatieve Bank U.A.*, 17 Civ. 2708 (LGS), 2019 WL 5593302, at \*3 (S.D.N.Y. Oct. 30, 2019). Numerous courts across the country have similarly held that avoiding the burden of ongoing litigation is a valid governmental interest that alone can justify dismissal of a *qui tam* action. *See, e.g.*, *Swift*, 318 F.3d at 254 (holding that government's goal of minimizing its expenses is a legitimate objection warranting dismissal); *Borzilleri*, 2019 WL 3203000, at \*2 n.2 ("Because the burden of further litigation is a valid and sufficient justification for the Government's dismissal, the Court need not and does not reach the Government's other proffered justifications."); *Hennepin Cnty.*, 2019 WL 608848, at \*7 (holding that avoiding the cost of litigation is a legitimate governmental purpose justifying dismissal); *Health Choice Alliance LLC v. Bayer Corp.*, No. 5:17-CV-00123-RWS-CMC, 2019 WL 4727422, at \*6 (E.D. Tex. Sept. 27, 2019) (holding that the government's legitimate interest in preserving resources is

10

sufficient to justify dismissal); *United States v. EMD Serono, Inc.*, 370 F. Supp. 3d 483, 490 (E.D. Pa. 2019) (holding that conserving costs is a legitimate governmental interest justifying dismissal); *Sibley*, 2019 WL 1305069, at *8 (holding that avoiding discovery burdens and costs of litigation is a legitimate governmental interest justifying dismissal).

If Relator proceeds in litigating this case, the Government may need to expend significant resources to monitor the litigation and possibly participate in document and witness discovery, given that USAID's programs, certification paperwork, and grant-making decisions will be at issue. Moreover, other federal agencies may potentially also be burdened by Relator's litigation of this matter, given that Relator's allegations touch upon broader issues such as the Government's international sanctions programs, counter-terrorism policies, and foreign relations. For example, the Office of Foreign Assets Control ("OFAC") within the Department of the Treasury, which publishes the Specially Designated Nationals and Blocked Persons List, might be served with discovery requests on topics germane to Relator's allegations. Significant governmental resources might potentially need to be expended to review and produce documents, many of which may be subject to deliberative process and other privileges; to prepare and produce witnesses for testimony; to provide counsel to represent the Government and its witnesses throughout the proceedings; and to oppose discovery requests as well. The Government's desire to avoid these costs is a valid governmental purpose rationally related to dismissal of the Complaint, which alone justifies the Government's motion.

### B. Dismissal of The Complaint Is Also Rationally Related to the Valid Purpose of Avoiding Litigation That Interferes With the Government's Policies and the Administration of Its Programs

In addition to avoiding the costs of burdensome litigation, dismissal of this case is rationally related to the valid purpose of avoiding litigation that may interfere with the Government's policies (in this case, its foreign policies) and the administration of its programs. It

11

is well established that foreign relations is a government interest entrusted to the political branches. *See Regan v. Wald*, 468 U.S. 222, 242 (1984) ("Matters relating to the conduct of foreign relations are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." (citing *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952)); *Islamic Am. Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34, 45 (D.D.C. 2005) ("[A]s a general principle, this Court should avoid impairment of decisions made by the Congress or the President in matters involving foreign affairs or national security.") (internal quotations omitted).

Should the pending litigation go forward, Relator would ask this Court to adjudicate whether alleged actions purportedly involving certain foreign entities constitute material support of terrorism and violate the certification language contained in USAID'sgrants to Oxfam. In order to decide the present action, the Court would need to determine, for example, the novel question of whether the non-monetary support described in the Complaint, which Relator alleges was provided to Hamas by Oxfam through an intermediary, *see* Compl. ¶¶ 14-15, constitutes "material support" of terrorism. The Court would also need to decide whether the Palestinian Authority, the self-government body of the Gaza Strip, should be considered a "terrorist" entity, as alleged by Relator. *Id.* ¶¶ 17-19. Lastly, the Court would need to determine whether Oxfam's representations to USAID were in fact material to USAID's decision to award funds to the defendant. The adjudication of these issues would necessarily interfere with the Government's own foreign policies, as well as its administration of USAID grant funds. The Government accordingly has a valid interest in precluding Relator from litigating these issues on behalf of the Government in the context of a declined *qui tam* action.

Because the Government has shown that dismissal of the *qui tam* Complaint in this action is rationally related to at least two valid government purposes, the Court should grant the Government's motion to dismiss.

### III. The Government's Dismissal of the Complaint Is Not Fraudulent, Arbitrary and Capricious, or Illegal

As *Sequoia Orange* lays out, after the Government has satisfied its burden to demonstrate that dismissal of a *qui tam* action is rationally related to a valid government purpose, which the Government has done here, "the burden switches to the relator to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." 151 F.3d at 1145. Relator cannot meet this burden.

In determining whether a relator has satisfied its burden to rebut the valid governmental purpose to which dismissal of a *qui tam* action is rationally related, a relator's "subjective disagreement with the Government's investigative strategy and ultimate decision does not provide the Court with a basis to second-guess the Government's decision to dismiss the case." *Borzilleri*, 2019 WL 3203000, at *2. Nor can a relator satisfy its burden through mere speculation or conclusory assertions. *See Health Choice*, 2019 WL 4727422, at *7 (motion to dismiss granted where there was no evidence "beyond speculation" that Government's decision to dismiss was fraudulent, arbitrary and capricious, or illegal); *Hennepin Cnty.*, 2019 WL 608848, at *7 (relators cannot demonstrate dismissal is fraudulent, arbitrary and capricious, or illegal where "[r]elators have not provided evidence in support of this argument beyond conclusory declarations").

Here, Relator cannot satisfy its burden to overcome dismissal. No evidence suggests that the Government's dismissal of the Complaint is fraudulent, arbitrary and capricious, or illegal. To the contrary, the Government's decisions to decline intervention and move to dismiss in this case are grounded in the Government's careful and complete investigation of Relator's

13

allegations. After the case was filed over a year and half ago, the Government diligently investigated the claims in the Complaint. While Relator may disagree with the Government's investigative strategy or ultimate declination decision in this case, the Government has articulated valid government purposes rationally related to dismissal of the Complaint, and no evidence suggests that the present motion is presented in anything other than good faith.

## CONCLUSION

For the reasons set forth above, the Government respectfully submits that the Court should grant its motion and dismiss this *qui tam* action pursuant to 31 U.S.C. § 3730(c)(2)(A).

Dated:  New York, New York
        November 18, 2019

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:   */s/ Jessica Jean Hu*
JESSICA JEAN HU
Assistant United States Attorney
86 Chambers Street
New York, NY  10007
Tel.: (212) 637-2726
E-mail:  jessica.hu@usdoj.gov